IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRUCE LEE BRYCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CIV-13-107-R |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d) (1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff's DIB and SSI applications were denied initially and on reconsideration at the administrative level. At his request, Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ), who issued an unfavorable decision on September 9, 2011 (TR. 10-21). Plaintiff appealed the ALJ's unfavorable decision to the Social Security Appeals Council, which found no reason to review the ALJ's decision (TR. 1-5). This judicial appeal followed.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to two inquiries: whether the administrative decision was supported by substantial evidence and whether the correct legal standards were applied. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

## THE ADMINISTRATIVE DECISION

In addressing Plaintiff's DIB and SSI applications, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date (TR. 15). At step two, the ALJ determined that Plaintiff has severe impairments consisting of degenerative disc disease, heart disease, and hypertension (TR. 15). At step three, the ALJ found that none of Plaintiff's impairments singly, or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, sit for a total of 6 hours in a workday, stand for a total of 2 hours in a workday, and walk for a total of 2 hours in a workday

(TR. 16).

At the second phase of step four, the ALJ determined that Plaintiff's past relevant work was as a stocker, a butcher and an auto mechanic, all of which require medium to heavy exertional capacities (TR. 19). Thus, at the third phase of step four, the ALJ determined that Plaintiff could not perform his past relevant work (TR. 19).

Based on the testimony of a vocational expert (VE), the ALJ determined at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy including electrical assembler and electrical control assembler (TR. 20).

## ISSUES FOR REVIEW

Plaintiff contends the ALJ erred in his analysis of the medical evidence. Plaintiff also challenges the ALJ's credibility analysis.

## ANALYSIS

### I. The ALJ's Analysis of the Medical Evidence

Plaintiff contends that the ALJ erred in his analysis of the medical opinions and the weight they were given. One medical source opinion from a treating physician was

given "little weight," but the opinions of the State agency doctors were given "great weight" (Plaintiff's Brief, ECF-15 at 4-9).

"Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion must be given controlling weight if it "is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Where, as here, the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." *Newbold v. Colvin*, 718 F.3d 1257, 1265, (10th Cir. 2013) (internal citation and quotations omitted). Treating source medical opinions not entitled to controlling weight "are still entitled to deference" and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927. *See also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The Tenth Circuit Court of Appeals set out those factors as follows:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins* at 1301 (internal quotation marks omitted).

First, Plaintiff challenges the weight given to a Medical Source Statement rendered by Dr. Boyce R. Coleman. As the ALJ observed, Plaintiff was referred to Dr. Coleman for pain management by the Veterans Administration. Based on an MRI of Plaintiff's lower back and examination, Dr. Coleman diagnosed Plaintiff with lumbago and degenerative disc disease of the lumbar spine (TR. 37-39, 690 ). According to Dr. Coleman's statement, Plaintiff could work only one hour per day, could sit or stand for only 30 minutes at a time, could not lift any weight, and had some additional postural limitations (TR. 690). Dr. Coleman assessed Plaintiff's pain as "moderate" (TR. 690).

The ALJ questioned whether Dr. Coleman could be considered a "treating source." Although Dr. Coleman's medical records were few, Plaintiff testified that he had future appointments with Dr. Coleman for pain-relieving steroid injections and possible surgery (TR. 38-39). This ongoing treatment plan is sufficient to support a conclusion that Dr. Coleman is a treating source. On remand, the ALJ should first state whether he is giving medical opinions of treating physicians, such as Dr. Coleman, controlling weight before moving on to the second step of the analysis.

The ALJ concluded that even if Dr. Coleman were a treating source, the limitations he found were so restrictive "that they are inconsistent with almost all other medical evidence in the record as well as the claimant's own statements about his activities" (TR. 18). The ALJ failed to specify which medical opinions in the record were inconsistent with that of Dr. Coleman. Rather, in discussing the weight he would give to Dr. Coleman's opinion, the ALJ stressed that Dr. Coleman had attended Plaintiff only twice and had based his opinion primarily on an MRI of Plaintiff's lower spine (TR. 18).

Although Dr. Coleman stated he had relied on the MRI, it is not clear that he relied solely on the MRI. He had examined Plaintiff and planned for future treatment. Moreover, the ALJ could have recontacted Dr. Coleman if he did not have enough information to properly analyze Dr. Coleman's opinion. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("The Commissioner, under the governing regulations, must recontact a treating physician when the information the doctor provides is 'inadequate . . . to determine whether you [the claimant] are disabled.'" 20 C.F.R. § 416.912(e)).

Additionally, the weight the ALJ gave to Dr. Coleman's opinion was based, in part, on what the ALJ considered an inconsistent assessment of Plaintiff's pain as only "moderate," even though the limitations he attributed to Plaintiff were, according to the ALJ, far more restrictive than one would expect for someone with only moderate pain. Pain alone or the lack thereof, is not proof of disability or nondisability. The ALJ's perceived inconsistency in Dr. Coleman's opinion does not constitute substantial evidence to support the ALJ's virtual rejection of Dr. Coleman's medical opinion.

The "great weight" the ALJ assigned to the opinion of the State agency doctors, must be considered in light of the fact that both the report of the consultative examination by Dr. Ronald Schatzman, (TR. 468-475), and the Physical RFC Assessment of Dr. Suzanne Roberts, a non-treating source, (TR. 568-575), were generated before the MRI study. Therefore, these non-treating sources did not have all the information that Dr. Coleman had. The ALJ's flawed analysis of the treating physician opinion of Dr. Coleman requires remand. On remand, the Commissioner may find it helpful to recontact Plaintiff's treating sources.

## II. The ALJ's Credibility Analysis

Plaintiff also challenges the ALJ's evaluation of his subjective complaints regarding the intensity, persistence, and limiting effects of his symptoms. The ALJ stated that Plaintiff's allegations were not credible to the extent they were inconsistent with the ALJ's own residual functional capacity assessment.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity

(TR. 17). Plaintiff contends that the ALJ statement is no more than "boilerplate" language (Plaintiff's Brief, ECF-15 at 11). This point is well taken, as the ALJ discussed only the medical evidence and did not specify which of Plaintiff's statements he found to lack credibility.

The Tenth Circuit Court of Appeals has stated that:

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted). On remand, the ALJ should "closely and affirmatively" link his credibility findings to substantial evidence in the record as a whole.

7

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **June 13, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on May 30, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE